IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

**FILED**

APR 1 2 2005

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO

| | |
|---|---|
| KARL BISSINGER, INC.,<br>a Missouri corporation, | ) |
| | ) |
| and | ) |
| | ) |
| KENNETH C. KELLERHALS II, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) CAUSE NO. |
| v. | ) JURY TRIAL DEMANDED |
| | ) |
| MAYNARD KOLBRENER II, | ) |
| | ) |
| LF CHOC, LLC, | ) |
| a Missouri limited liability corporation, | ) |
| | ) |
| MARLEY F. OTTO, | ) |
| | ) |
| DEBRA L. OTTO, | ) |
| | ) |
| and | ) |
| | ) |
| BRYAN CLICK, | ) |
| | ) |
| Defendants. | ) |

05CV00579DJS

## COMPLAINT

COME NOW Plaintiffs Karl Bissinger, Inc., and Kenneth C. Kellerhals II, by and

through undersigned counsel, and for their cause of action against the defendants state as

follows:

This complaint seeks redress for an illegal pattern of conduct perpetrated by the

defendants in an effort to harm the business of Karl Bissinger, Inc., and to derive profit from the

Bissinger's name and good will. Defendants Kolbrener, Marley Otto, Debra Otto, and Click

were all formerly associated with Bissinger's and are attempting to use that former association to

their profit and to Bissinger's detriment through a calculated scheme of false representations, theft of trade secrets, and misappropriation of trade dress. Bissinger's will continue to be harmed and the defendants will continue this illegal predatory conduct if the Court does not grant relief.

Count I seeks relief for unfair competition under the federal Lanham Act because the defendants have caused actual confusion and are likely to cause additional deception of the public due to the defendants' efforts to make the public believe that Bissinger's authorizes or controls the sale of the defendants' products or that the defendants are associated with or related to Bissinger's. The defendants' wrongful acts constitutes a deliberate, intentional and willful attempt to injure Bissinger's business, to trade on Bissinger's business reputation, to palm off or pass off the defendants' products as coming from Bissinger's, and/or to confuse and deceive consumers. The related Count II seeks relief for damages cause by the defendants' false advertising. Count III, based on the defendants' tortious defamation of Bissinger's, is also related to the same conduct.

Count IV seeks relief for violations of federal trademark law. The defendants' improper use of trademarks created and used by Bissinger's to identify Bissinger's chocolates have caused actual confusion and are likely to cause additional confusion among consumers. Count V seeks relief under state trademark law.

Count VI is based on the Missouri law that forbids misappropriation of trade secrets. The defendants improperly appropriated trade secrets belonging to the plaintiffs, including candy recipes, methods for making candies, marketing information, and customer lists. The defendants are now trying to use this confidential information for their own profit. Count VII is related to the theft of Bissinger's confidential information in that Defendants Marley Otto, Debra Otto, and

Click signed agreements with Bissinger's pursuant to which these defendants agreed that confidential information critical to the success of Bissinger's would not be given out or used outside of Bissinger's premises. Contrary to these agreements, these defendants are using and exploiting this information in their new business.

### Bissinger's History

1.    Plaintiff Karl Bissinger, Inc. ("Bissinger's"), is a Missouri corporation with its principal place of business in St. Louis, Missouri.

2.    Bissinger's history dates back to the Bissinger family, which has been making fine French confections for more than 400 years. Bissinger's takes pride in the fact that it has not sacrificed quality ingredients, taste, or craftsmanship to produce more candy at a lower cost. Even today, in an age of high-tech production and immediacy, Bissinger's remains committed to the high standards, heritage, and traditions that have made the company what it is today.

3.    The name "Bissinger" has long been linked to fine confections. The Bissinger family began creating their fine delicacies in 17th-century Paris, when European nobility, heads of state, Ludwig of Bavaria, and the Rothschilds were all loyal Bissinger enthusiasts. Bissinger's confections were enjoyed by King Louis XIV and were used as a gift by Napoleon Bonaparte to his beloved Josephine upon his return from battle. Karl Frederic Bissinger, the company's namesake, was named the Confiseur Imperial ("Candy Maker of the Empire") for excellence in the confectionery arts by Emperor Louis Napoleon.

4.    Karl Bissinger left France in 1863, bringing his loyal master candy maker and all of the Bissinger family candy-making secrets to the United States near Cincinnati, Ohio. In 1927, his son, also named Karl, opened the Bissinger candy-making kitchens and first Bissinger shop in St. Louis on McPherson Avenue. The McPherson shop has withstood the test of time

3

and still functions as St. Louis' most popular candy store, retaining all of its original fixtures, furniture, chandeliers, and even the refrigeration units that were present when the store opened in 1927. The store, with all of its Old World charm, is a historical treasure in Saint Louis and thrives even today.

5.     Plaintiff Kenneth C. Kellerhals II is an individual citizen of the state of Missouri residing in St. Louis County, Missouri.

6.     Defendant Maynard Kolbrener II is an individual citizen of the state of Missouri residing in St. Louis County, Missouri.

7.     Through a Stock Purchase Agreement dated June 2, 1995, Defendant Kolbrener and others sold all of the outstanding stock of Even Break, Inc., to Plaintiff Kellerhals. Even Break, Inc., was the parent corporation of Bissinger's. Through the Stock Purchase Agreement, Plaintiff Kellerhals purchased the stock of Bissinger's, including all of the recipes, processes, intellectual property, trademarks, and other property owned by Bissinger's. On November 1, 1996, Bissinger's purchased all of the remaining right, title, and interest in the trademark "Bissinger's" from the successors of the Bissinger family in Cincinnati, Ohio.

## Lake Forest Confections

8.     On August 11, 1995, Defendant Kolbrener entered into a Noncompetition Agreement with Bissinger's pursuant to which Defendant Kolbrener agreed not to compete in the sale of chocolate for a period of four years. Through an agreement dated February 16, 1996, Defendant Kolbrener agreed to extend the Noncompetition Agreement for an additional year through and including August 11, 2000.

9.     Defendant LF Choc, LLC, is a Missouri limited liability corporation with its principal place of business in St. Louis County, Missouri. Defendants Kolbrener and LF Choc,

LLC, own and began operating a retail chocolate business known as Lake Forest Confections in September of 2004.

10.    Defendant Marley F. Otto is an individual citizen of the state of Missouri residing in St. Louis County, Missouri. This defendant is a former Bissinger's employee. On February 16, 2000, this defendant entered into an agreement with Bissinger's stating, in part: "I am aware that during the course of my employment confidential information may be made available to me. I understand that this information is critical to the success of Bissinger and must not be given out or used outside of Bissinger's premises. In the event of termination of employment, whether voluntary or involuntary, I hereby agree not to utilize or exploit this information with any other individual or company." In addition, on June 18, 2003, this defendant entered into an agreement with Bissinger's "to continue to keep and hold in strictest confidence all confidential information or trade secrets of [Bissinger's] which you learned of or became aware of during the course of your employment. In the event we are successful in any suit or proceeding brought or instituted to enforce any of the provisions of this agreement on account of any damages sustained by us, you agree to pay our reasonable attorney's fees to be fixed by the Court." This defendant is now an employee of Defendants Kolbrener and LF Choc, LLC, and actively participates in the business of Lake Forest Confections.

11.    Defendant Debra L. Otto is an individual citizen of the state of Missouri residing in St. Louis County, Missouri. This defendant is a former Bissinger's employee. On May 24, 1999, this defendant entered into an agreement with Bissinger's stating, in part: "I am aware that during the course of my employment confidential information may be made available to me. I understand that this information is critical to the success of Bissinger and must not be given out or used outside of Bissinger's premises. In the event of termination of employment, whether

5

voluntary or involuntary, I hereby agree not to utilize or exploit this information with any other individual or company." This defendant is now an employee of Defendants Kolbrener and LF Choc, LLC, and actively participates in the business of Lake Forest Confections.

12.     Defendant Bryan Click is an individual citizen of the state of Missouri residing in St. Louis County, Missouri. This defendant is a former Bissinger's employee. On May 24, 1999, this defendant entered into an agreement with Bissinger's stating, in part: "I am aware that during the course of my employment confidential information may be made available to me. I understand that this information is critical to the success of Bissinger and must not be given out or used outside of Bissinger's premises. In the event of termination of employment, whether voluntary or involuntary, I hereby agree not to utilize or exploit this information with any other individual or company." This defendant is now an employee of Defendants Kolbrener and LF Choc, LLC, and actively participates in the business of Lake Forest Confections.

13.     The actions of the defendants mentioned in this complaint occurred in the Eastern District of Missouri.

## The Defendants' Scheme

14.     In September of 2004, the defendants commenced a pattern of misrepresentations, misappropriations, and statutory and common law violations attempting to profit from their former association with Bissinger's and knowledge of Bissinger's confidential information.

15.     Lake Forest Confections operates a retail chocolate shop at 7801 Clayton Road in St. Louis, County, Missouri. This location is six tenths of a mile south of Bissinger's retail location at 2053 Saint Louis Galleria, 4.9 miles east of Bissinger's retail location at 97 Plaza Frontenac, and 5.8 miles west of Bissinger's original retail location at 4742 McPherson.

16.      Through Lake Forest Confections, Defendants Kolbrener and LF Choc, LLC,
have attempted to create the false impression among St. Louis-area consumers that Lake Forest
is no different from Bissinger's except in name. Lake Forest has attempted to create this false
impression in numerous ways. Lake Forest's promotional materials prominently mention and
imply a connection to Bissinger's. Lake Forest employees have made material
misrepresentations to consumers that Lake Forest candies are the same as Bissinger's candies.
Lake Forest has adopted a trade dress for its retail store that is confusingly similar to the well-
known, distinctive trade dress associated with Bissinger's retail stores. Lake Forest has copied
the trademarks and trade dress associated with Bissinger's handmade chocolates.

17.      In pursuing this scheme, the defendants have fabricated and publicized a false
story about the founding of Lake Forest. In television reports broadcast nationally and locally
(one of which is reproduced on the Lake Forest internet site, www.lakeforestconfections.com),
the defendants falsely represent that Defendant Kolbrener sold "a candy company in St. Louis
eight years ago," despite the fact that Defendant Kolbrener sold his interest in Bissinger's ten
years before the report. In the report, the defendants falsely represented that Defendant
Kolbrener created Lake Forest as soon as his Noncompetition Agreement expired, despite the
fact that the Noncompetition Agreement had expired more than four years earlier.

18.      The defendants have falsely represented that Defendant Kolbrener created Lake
Forest in order to rehire all of his old employees who needed work. Of the six former
Bissinger's employees employed at Lake Forest, two of them were actively employed at
Bissinger's when Defendants Kolbrener and LF Choc, LLC, hired them at Lake Forest, two were
gainfully employed elsewhere, and only two were unemployed (and even these two had been

7

unemployed for more than two years before Defendants Kolbrener and LF Choc, LLC, opened
Lake Forest).

19.    Defendant Kolbrener represented that he hired the former Bissinger's employees
because these employees had given him up to "thirty years" of their lives, despite the fact that
Defendant Kolbrener was involved with Bissinger's for much less than thirty years.

20.    Defendants Kolbrener and LF Choc, LLC, have falsely solicited Bissinger's
customers and other consumers by asking, "Have you been hungering for an acorn mint? Pining
for a twin pecan? Obsessing about opera cremes? Or perhaps just wondering whatever
happened to all of the scrumptious chocolate confections you and your family and friends
adored? After almost a decade of deprivation, it is my great pleasure to announce they're back,
better than ever, right in your neighborhood! . . . [W]atch as we whip up a batch of amazing
confections "like they use to be" right in the store." This solicitation and similar ones are false in
that Bissinger's Acorn Mints, Twin Pecan, and Opera Cremes remain and have remained
available from Bissinger's. There has been no deprivation, and certainly no "decade of
deprivation." Further, these are trademarks owned by Bissinger's.

21.    Prior to the Stock Purchase Agreement, Bissinger's had employed trade dress in
its stores and on its goods and packaging. The trade dress, all of which is non-functional,
included but was not limited to the following:

a)    Bissinger's employed an Old World European motif for it stores, accentuated by
custom cabinetry and display counters, unique chandeliers, wallpaper, and flooring, distinctive
candy displays, and unique furnishings, including chairs given to Bissinger's by Lilly Langtry.

b)    Bissinger's candies had unique appearances, including but not limited to
exclusive hand-applied "signatures" that identified Bissinger's candies, unique sizes and shapes

8

such as Twin Pecans (pecan halves sandwiched between marzipan and dipped in dark chocolate) and Bear Claws (chocolate-covered pecans and caramel, commonly known as "turtles" having a smooth square shape), unique colors, and unique decorations, such as chocolate-covered cookies and molasses caramel lollipops bearing custom-made seasonal decorations, chocolate rabbits with bows, crème-filled chocolate eggs with custom-made decorations, and unique marshmallow chicks.

(c)     Bissinger's employed unique presentations and packaging for its products, including collectable paper mache eggs and various product assortments.

(d)     Bissinger's presented its trade name and trademark in a distinctive lettering style.

22.     In addition to his involvement with the creation, promotion, and protection of the foregoing trade dress prior to the Stock Purchase Agreement, Kolbrener designed Bissinger's product catalogs and authored text describing Bissinger's products. Kolbrener often used the terms "unique," "exclusive," "classic," and "tradition" in describing Bissinger's candies. Kolbrener made references to centuries-old recipes of the Bissinger family, and the fact that Bissinger's candies were preferred by chocolate connoisseurs. Kolbrener used these words and others, and made these references, in order to create the theme and trade dress of Bissinger's advertising and promotional activities – an Old World European-style chocolatier that made unique, hand-made candies in a traditional manner based on old family recipes.

23.     The foregoing trade dress was either inherently distinctive or became distinctive through Bissinger's long-standing, continuous, and exclusive use prior to the Stock Purchase Agreement. Kolbrener had knowledge of the trade dress. In some cases, Kolbrener created the trade dress for Bissinger's, and Kolbrener publicly promoted and/or asserted rights in the trade dress on Bissinger's behalf.

9

24. Bissinger's continued the exclusive use of the trade dress and the advertising theme after the Stock Purchase Agreement and still uses the trade dress and advertising theme today in interstate commerce.

25. Also prior to the Stock Purchase Agreement, Bissinger's had adopted and used a number of trademarks for specific candies. These included, among others, OPERA CREMES, LANGTRY'S, TWIN PECANS, and ACORN MINTS.

26. In addition, the hand-applied "signatures" on certain candies were inherently distinctive trademarks that customers and potential customers recognized and associated with Bissinger's. Bissinger's has advertised these signatures by means of a promotional insert in its chocolate collections.

27. The foregoing trademarks, and others, were either inherently distinctive or became distinctive through Bissinger's long-standing, continuous, and exclusive use prior to the Stock Purchase Agreement. Kolbrener had knowledge of the trademarks. In some cases, Kolbrener created the trademarks for Bissinger's, and Kolbrener publicly promoted and/or asserted rights in the trademarks on Bissinger's behalf.

28. Bissinger's continued the exclusive use of these trademark in interstate commerce after the Stock Purchase Agreement and has not abandoned these trademarks.

29. The defendants have deliberately chosen to undertake a pattern of behavior designed to create an appearance among the parties' customers and potential customers that the Lake Forest Confectionery is associated with or sponsored by Bissinger's:

(a)    The defendants have adopted trade dress that is identical or highly similar to Bissinger's established trade dress, including the following:

10

(1)    The defendants have deliberately designed and decorated their store in a manner that is highly similar to Bissinger's stores. The defendants have copied the distinctive Old World European motif that is present in Bissinger's stores. The defendants have installed chandeliers that are identical or nearly identical to those in Bissinger's stores. The defendants have installed tiled flooring that is nearly identical or nearly identical in color and appearance to the tile flooring in Bissinger's stores. The defendants have hung wallpaper that is identical, or nearly identical, in color and pattern to the wallpaper in Bissinger's stores. The defendants have installed cabinetry and display counters that are highly similar in color and appearance to the cabinetry and display counters in Bissinger's stores. The defendants display and package their candy in a manner that is highly similar to the candy displays and packages in Bissinger's stores. The defendants have placed chairs in their store that are either identical or highly similar to the "Lilly Langtry" chairs in Bissinger's stores.

(2)    The defendants have deliberately copied the appearance of Bissinger's candies. Virtually every single piece of candy manufactured and sold by the defendants is a copy of Bissinger's corresponding candy. The defendants have copied the shape, size, color, signature, decoration and, in some cases, the name of Bissinger's candies.

(3)    The defendants have deliberately adopted the unique lettering used in Bissinger's trade name and trademark.

(4)    The defendants have deliberately copied Bissinger's advertising theme by creating advertising, promotional materials, and a web page that refer to old recipes, traditional favorites, and the purported preferences of connoisseurs.

(b)    The defendants have deliberately adopted and used several trademarks owned by Bissinger's, including but not limited to OPERA CREMES, TWIN PECANS, LANGTRY'S (or

11

LILLY LANGTREES), ACORN MINTS, and the unique signatures appearing on certain candies;

(c)     Since opening, the defendants have consistently referred to Bissinger's in advertising and other promotional materials, and have referred to "old-fashioned" recipes handed down through generations.

30.     The foregoing conduct has occurred in interstate commerce.

31.     As a result of the defendants' conduct, there has been actual confusion among the parties' customers and potential customers. On several occasions, Bissinger's customers and potential customers have asked questions or made statements indicating a mistaken belief that Lake Forest Confectionery is associated with Bissinger's.

32.     In addition to the confusion the defendants have created, the defendants' promotional activities in Missouri and Illinois contain false and deceptive representations. These include the following:

(a)     The defendants' employees have represented to customers that the defendants' candies are "the same as" Bissinger's candies only less expensive, despite the defendants' claims that they are not using Bissinger's recipes;

(b)     The defendants have represented that certain candies, including ACORN MINTS, TWIN PECANS, and OPERA CREMES, were not available for almost a decade, despite the fact that Bissinger's has continued to sell these candies and has not abandoned these marks;

(c)     The defendants have represented that their candies are "fresher" because they are made in the same store where they are sold, despite the fact that this practice makes no difference to the "freshness" of the candies relative to Bissinger's candies;

12

(d)     The defendants have referred to their candies as being "just the way you
remember them," thus implying that the defendants' candies are the same as Bissinger's candies
since the defendants are new to the business;

(e)     The defendants have referred to their pecan balls as "unique" even though they
are identical to Bissinger's pecan nut balls;

(f)     The defendants have also referred to their "pecan balls" as "the dessert of
royalty," a direct reference to the Bissinger family's heritage as the candy makers to French
royalty;

(g)     The defendants represent that their OPERA CREMES are made "to old world
perfection as only [the defendants' candymaker] can do" despite the fact that Bissinger's has
made and continues to make OPERA CREMES using the recipe and technique dating back long
before the defendants' candymaker began making OPERA CREMES when employed by
Bissinger's;

(h)     The defendants represent that their cream eggs are "a seasonal favorite for
generations" and that their Easter mints are "Year after Year, always a favorite" despite the fact
that only Bissinger's, and not the defendants, has been selling these seasonal product for years;
and

(i)     Despite asserting that they are not using Bissinger's recipes, the defendants state
that many of their products are from old recipe books that belonged to Bissinger's and should
have remained in Bissinger's possession after the Stock Purchase Agreement.

## COUNT I - VIOLATION OF 15 U.S.C. § 1125(a)(1)(A)

## UNFAIR COMPETITION

33.     The plaintiffs restate paragraphs 1 through 32 as if set forth herein.

13

34.     The foregoing acts of the defendants, separately and in combination, have caused actual confusion and are likely to cause additional confusion, mistake or deception as to the source, origin, sponsorship or approval of the defendants' goods and services in that consumers and others are likely to believe Bissinger's authorizes or controls the sale of the defendants' products or that the defendants are associated with or related to Bissinger's, in violation of 15 U.S.C. § 1125(a)(1)(A), resulting in damages to Bissinger's.

35.     The defendants' wrongful acts constitutes a deliberate, intentional and willful attempt to injure Bissinger's business, to trade on Bissinger's business reputation, to palm off or pass off the defendants' products as coming from Bissinger's, and/or to confuse and deceive consumers.

36.     The defendants' acts are greatly and irreparably damaging Bissinger's and will continue to damage Bissinger's unless enjoined by this Court.

37.     Because of the defendants' wrongful conduct, this is an "exceptional case" under the Lanham Act.

WHEREFORE, the plaintiffs requests that judgment be entered in its favor and that:

A.     The Court award the plaintiffs all damages and other monetary relief available under 15 U.S.C. § 1117(a) as a result of the defendants' wrongful conduct, such damages and monetary relief including, but not limited to, actual damages, statutory damages, lost profits, Defendant's profits, treble damages, and attorneys' fees;

B.     The Court enter injunctive relief ordering the defendants to:

(1)     Cease all use of the trade dress and trademarks identified above and any other trade dress or trademarks that are confusingly similar to the plaintiffs' trade dress or trademarks;

14

(2)     Refrain from doing any other act or thing likely to induce the belief that the defendants' business or products are in any way legitimately connected with or sponsored or approved by the plaintiffs;

(3)     Deliver up for destruction all goods, labels, signs, brochures, prints, advertisements, and any and all other material of an infringing or unfair or deceptive nature in the defendants' possession or control, as well as all plates and other means of making the same; and,

(4)     Take corrective action by notifying customers that they are not associated with the plaintiffs, do not sell candy that is the same as the plaintiffs', and does not use recipes belonging to the plaintiffs.

C.      The Court award the plaintiffs such other and further relief, including costs, as this Court deems just and equitable.

## COUNT II - VIOLATION OF 15 U.S.C. § 1125(a)(1)(B)

### FALSE ADVERTISING

38.     The plaintiffs restate paragraphs 1 through 37as if set forth herein.

39.     The foregoing acts of the defendants, separately and in combination, misrepresent the nature, characteristics, or qualities of the defendants' and/or the plaintiffs' goods, services, and commercial activities in violation of 15 U.S.C. § 1125(a)(1)(B), resulting in damages to the plaintiffs.

40.     The defendants' wrongful acts constitutes a deliberate, intentional, and willful attempt to injure the plaintiffs' business, to trade on the plaintiffs' business reputation, to palm off or pass off the defendants' products as coming from the plaintiffs, and/or to confuse and deceive consumers.

41.     The defendants' acts are greatly and irreparably damaging the plaintiffs and will continue to damage the plaintiffs unless enjoined by this Court.

42.     Because of the defendants' wrongful conduct, this is an "exceptional case" under the Lanham Act.

WHEREFORE, the plaintiffs request that judgment be entered their its favor and that:

A.     The Court award the plaintiffs all damages and other monetary relief available under 15 U.S.C. § 1117(a) as a result of the defendants' wrongful conduct, such damages and monetary relief including, but not limited to, actual damages, statutory damages, lost profits, the defendants' profits, treble damages and attorneys' fees;

B.     The Court enter injunctive relief ordering the defendants to:

(1)     Cease all use of the trade dress and trademarks identified above and any other trade dress or trademarks that are confusingly similar to the plaintiffs trade dress or trademarks;

(2)     Refrain from doing any other act or thing likely to induce the belief that the defendants' business or products are in any way legitimately connected with or sponsored or approved by Plaintiff;

(3)     Deliver up for destruction all goods, labels, signs, brochures, prints, advertisements, and any and all other material of an infringing or unfair or deceptive nature in the defendants' possession or control, as well as all plates and other means of making the same; and,

(4)     Take corrective action by notifying customers that it is not associated with the plaintiffs, does not sell candy that is the same as the plaintiffs', and does not use recipes belonging to the plaintiffs.

16

C.     The Court award the plaintiffs such other and further relief, including costs, as this Court deems just and equitable.

## COUNT III -- DEFAMATION

43.    The plaintiffs restate paragraphs 1 through 42 if set forth herein.

44.    The defendants' statements about Bissinger's were false and defamatory.

45.    The defendants' statements about Bissinger's injured the business reputation of Bissinger's.

46.    The plaintiffs were damaged thereby.

47.    There was no justification for the defendants' statements set forth above.

48.    The defendants' conduct was outrageous because of the defendants' evil motive and/or reckless indifference to the rights of the plaintiffs.

49.    An award of punitive damages is required to deter the defendants and others from like conduct.

WHEREFORE, Plaintiffs Karl Bissinger, Inc., and Kenneth C. Kellerhals II respectfully pray for judgment against the defendants in an amount to be proved at trial, for an award of punitive damages, for their costs herein, and for such other and further relief as the Court deems just and proper.

## COUNT IV - VIOLATION OF 15 U.S.C. § 1125(a)(1)(A)

## UNFAIR COMPETITION/TRADEMARK INFRINGEMENT

50.    The plaintiffs restate paragraphs 1 through 49 as if set forth herein.

51.    Defendants' use of OPERA CREMES, TWIN PECANS, ACORN MINTS, and the signatures created and used by Bissinger's to identify Bissinger's chocolates have caused actual confusion and are likely to cause additional confusion, mistake or deception as to the

17

source, origin, sponsorship or approval of the defendants' goods bearing these marks in that consumers and others are likely to believe Bissinger's authorizes or controls the sale of the defendants' products or that the defendants are associated with or related to Bissinger's, in violation of 15 U.S.C. § 1125(a)(1)(A), resulting in damages to Bissinger's.

52.    The defendants' wrongful acts constitutes a deliberate, intentional and willful attempt to injure Bissinger's business, to trade on Bissinger's business reputation, to palm off or pass off the defendants' products as coming from Bissinger's, and/or to confuse and deceive consumers.

53.    The defendants' acts are greatly and irreparably damaging Bissinger's and will continue to damage Bissinger's unless enjoined by this Court.

54.    Because of the defendants' wrongful conduct, this is an "exceptional case" under the Lanham Act.

WHEREFORE, the plaintiffs requests that judgment be entered in its favor and that:

A.    The Court award the plaintiffs all damages and other monetary relief available under 15 U.S.C. § 1117(a) as a result of the defendants' wrongful conduct, such damages and monetary relief including, but not limited to, actual damages, statutory damages, lost profits, defendants' profits, treble damages, and attorneys' fees;

B.    The Court enter injunctive relief ordering the defendants to:

(1)    Cease all use of the trademarks identified above and any other trademarks that are confusingly similar to the plaintiffs' trademarks;

(2)    Refrain from doing any other act or thing likely to induce the belief that the defendants' business or products are in any way legitimately connected with or sponsored or approved by the plaintiffs;

18

(3)     Deliver up for destruction all goods, labels, signs, brochures, prints,
advertisements, and any and all other material bearing the infringing trademarks in the
defendants' possession or control; and,

(4)     Take corrective action by notifying customers that they are not associated with the
plaintiffs and do not sell candies known as ACORN MINTS, TWIN PECANS, or OPERA
CREMES.

C.     The Court award the plaintiffs such other and further relief, including costs, as
this Court deems just and equitable.

COUNT V -- VIOLATION OF MO. REV. STAT. §§ 417.061, 417.066

COMMON LAW TRADEMARK INFRINGEMENT – MISSOURI

55.     The plaintiffs restate paragraphs 1 through 54 as if set forth herein.

56.     The foregoing acts of the defendants, separately and in combination, have caused
actual confusion and are likely to cause additional confusion, mistake or deception as to the
source, origin, sponsorship or approval of the defendants' good and services in that consumers
and others are likely to believe the plaintiffs authorize or control the sale of the defendants'
products or that the defendants are associated with or related to the plaintiffs, in violation of Mo.
Rev. Stat. §§ 417.061 and 417.066, and common law.

57.     The defendants' wrongful acts constitutes a deliberate, intentional and willful
attempt to injure the plaintiffs' business, to trade on the plaintiffs' business reputation, to palm
off or pass off the defendants' products as coming from the plaintiffs, and/or to confuse and
deceive consumers.

58.     The defendants' acts are greatly and irreparably damaging the plaintiffs' business
reputation and dilute the distinctive quality of the plaintiffs' mark.

19

59.     Under Mo. Rev. Stat. §§ 417.061, the plaintiffs are entitled to injunctive relief.

WHEREFORE, the plaintiffs request that judgment be entered in their favor and that:

A.      The Court award the plaintiffs all damages and other monetary relief available as a result of the defendants' wrongful conduct, such damages and monetary relief including, but not limited to, actual damages, lost profits, and the defendants' profits;

B.      The Court enter injunctive relief ordering the defendants to:

(1)     Cease all use of the trade dress and trademarks identified above and any other trade dress or trademarks that are confusingly similar to the plaintiffs' trade dress or trademarks;

(2)     Refrain from doing any other act or thing likely to induce the belief that the defendants' business or products are in any way legitimately connected with or sponsored or approved by the plaintiffs;

(3)     Deliver up for destruction all goods, labels, signs, brochures, prints, advertisements, and any and all other material of an infringing or unfair or deceptive nature in the defendants' possession or control, as well as all plates and other means of making the same; and,

(4)     Take corrective action by notifying customers that they are not associated with the plaintiffs, does not sell candy that is the same as the plaintiffs', and does not use recipes belonging to the plaintiffs.

C.      The Court award the plaintiffs such other and further relief, including costs and attorney's fees, as this Court shall deem just and equitable.

COUNT VI - VIOLATION OF MO. REV. STAT. §§ 417.455 and 417.457

MISAPPROPRIATION OF TRADE SECRETS

60.     Plaintiffs restate paragraphs 1 through 59 as if set forth herein.

61. The defendants, individually and collectively, misappropriated the following trade secrets belonging to plaintiffs:

      a) Written and unwritten candy recipes;

      b) Written and unwritten methods for making candies;

      c) Marketing information regarding sales history and customer preferences for certain types of candies

      d) Customer lists.

62. The defendants, individually and collectively, are now using the foregoing trade secrets to gain commercial advantage that would not otherwise be available absent such misappropriation.

63. The defendants' acts are greatly and irreparably damaging Bissinger's and will continue to damage Bissinger's unless restrained by this Court.

WHEREFORE, the plaintiffs request that judgment be entered in their favor and that:

A. The Court award the plaintiffs all damages and other monetary relief available under the Missouri Trade Secrets Act as a result of the defendants' wrongful conduct;

B. The Court enter injunctive relief ordering defendants to cease all use of plaintiffs' trade secrets and to deliver to defendants all written trade secret material.

C. The Court award defendants such other and further relief, including costs and attorney's fees, as this Court shall deem just and equitable.

## COUNT VII -- BREACH OF CONTRACT

64. The plaintiffs restate paragraphs 1 through 63 as if set forth herein.

65. Defendants Marley Otto, Debra Otto, and Click are parties to mutual agreements with Bissinger's pursuant to which these defendants agreed, in consideration of their

employment, that confidential information critical to the success of Bissinger's would not "be given out or used outside of Bissinger's premises." Pursuant to these agreements, these defendants agreed "not to utilize or exploit this information with any other individual or company" in the event of termination of employment, whether voluntary or involuntary. Defendants Marley Otto entered into an additional agreement with Bissinger's pursuant to which he agreed "to continue to keep and hold in strictest confidence all confidential information or trade secrets of [Bissinger's] which you learned of or became aware of during the course of your employment. In the event we are successful in any suit or proceeding brought or instituted to enforce any of the provisions of this agreement on account of any damages sustained by us, you agree to pay our reasonable attorney's fees to be fixed by the Court."

66.     Bissinger's has fully performed its obligations under its agreements with the defendants.

67.     The defendants have breached their obligations under the agreements in that they have utilized and exploited Bissinger's confidential information with the other defendants.

68.     Bissinger's has suffered damage as a result of the defendants' breaches of contract.

WHEREFORE, Plaintiffs Karl Bissinger, Inc., and Kenneth C. Kellerhals II respectfully pray for judgment against Defendant Marley F. Otto, Defendant Debra L. Otto, and Defendant Bryan Click in an amount to be proved at trial, for their costs herein, and for such other and further relief as the Court deems just and proper. The plaintiffs also pray for judgment against Defendant Marley F. Otto in the amount of their reasonable attorney fees incurred in enforcing Defendant Marley F. Otto's agreement to keep and hold in strictest confidence all confidential information or trade secrets of Bissinger's.

22

## COUNT VIII -- PRIMA FACIE TORT

69.    The plaintiffs restate paragraphs 1 through 68 as if set forth herein.

70.    The defendants' actions set forth above were intentional.

71.    The defendants intended to injure the plaintiffs thereby.

72.    The plaintiffs were damaged thereby.

73.    There was no justification for the defendants' actions set forth above.

74.    There was insufficient justification for the defendants' actions set forth above.

75.    The defendants' conduct was outrageous because of the defendants' evil motive

and/or reckless indifference to the rights of the plaintiffs.

76.    An award of punitive damages is required to deter the defendants and others from

like conduct.

WHEREFORE, Plaintiffs Karl Bissinger, Inc., and Kenneth C. Kellerhals II respectfully

pray for judgment against the defendants in an amount to be proved at trial, for an award of

punitive damages, for their costs herein, and for such other and further relief as the Court deems

just and proper.

David G. Ott                          #15268
William M. Corrigan, Jr.               #2879
Andrew B. Mayfield                     #3779
Jeffery T. McPherson                  #57206
ARMSTRONG TEASDALE LLP
One Metropolitan Square, Suite 2600
St. Louis, Missouri 63102-2740
(314) 621-5070
(314) 621-5065 (facsimile)
dott@armstrongteasdale.com
wcorrigan@armstrongteasdale.com
amayfield@armstrongteasdale.com
jmcpherson@armstrongteasdale.com

ATTORNEYS FOR PLAINTIFFS KARL
BISSINGER, INC. AND KENNETH C.
KELLERHALS II